Kory A. Langhofer – 024722
klanghofer@bhfs.com
John C. West – 007233
jwest@bhfs.com
**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
One East Washington Street, Suite 2400
Phoenix, AZ  85004
Telephone:  602.382.4040
Facsimile:  602.382.4020

Attorneys for Plaintiffs E. Paul Whetten, *et al.*

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| E. PAUL WHETTEN, an individual; ROBIN HARRIS, an individual; JOHN GILES, an individual; BARBARA ABNEY, an individual; TRACI BEAGLEY, an individual; DILWORTH C. BRINTON JR., an individual; CURTIS BROWN, an individual; ALAYNE FAVREAU, an individual; J. GLADE SOELBERG, an individual; LARRY WINWARD, an individual; BRENT ELLSWORTH, an individual; DAVID RICKS, an individual; COLLEEN WHEELER, an individual; DREXDEN DAVIS, an individual; BRIAN NISSEN, an individual; and ALAN SOELBERG, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> MARICOPA COUNTY REPUBLICAN COMMITTEE, an unincorporated political committee; the INVESTIGATIVE COMMITTEE, an *ad hoc* subcommittee of the Maricopa County Republican Committee; and ROB HANEY, an individual, <br><br> Defendants, | Case No.: <br><br> **VERIFIED COMPLAINT** |

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

E. Paul Whetten, Robin Harris, John Giles, Larry Winward, Brent Ellsworth, David Ricks, Colleen Wheeler, Barbara Abney, Traci Beagley, Dilworth C. Brinton Jr., Curtis Brown, Drexden Davis, Alayne Favreau, Brian Nissen, Alan Soelberg, and J. Glade Soelberg (together, the "Plaintiffs") bring this action against the Maricopa County Republican Committee (the "County Party"), the *ad hoc* investigative committee of the County Party (the "Investigative Committee"), and Rob Haney (the "County Chairman" and, together with the County Party and the Investigative Committee, the "Defendants").

## SUMMARY OF THE CASE

1.      On November 29, 2012, the Republican precinct committeemen ("PCs") in Arizona legislative district 25 ("LD25") held an organizational meeting to elect (a) a board of officers (the "LD25 Board of Officers") to govern their internal affairs and (b) State Committeemen to help govern the affairs of the Arizona Republican Party.

2.      After the meeting, the County Chairman appointed the Investigative Committee to investigate the two elections held in LD25.

3.      After a cursory investigation, the County Chairman and the Investigative Committee purported to invalidate both elections in LD25 and to call a meeting of the PCs in LD25 to hold new elections for the board of officers and State Committeemen.

4.      The purported invalidation by the County Chairman and the Investigative Committee is invalid and unlawful because, among other reasons:

      a.  the Investigative Committee had received no complaints concerning the conduct of the LD25 Board of Officers;

      b.  the Investigative Committee was not authorized by statute or bylaws to judge, investigate, supervise, or invalidate any elections in LD25;

      c.  the Investigative Committee violated open meeting laws, proceeded behind closed doors, and expelled a public observer;

      d.  the Investigative Committee conducted a patently incomplete investigation, and did not attempt to contact or interview individuals

whose actions were the ostensible basis for the invalidation of the LD25 elections;

e.  the Investigative Committee did not provide adequate notice of its meetings or decisions, or afford affected parties an opportunity to attend the proceedings, present evidence, cross examine witnesses, or speak to the issues in the investigation; and

f.  the Investigative Committee at no point found, or even considered whether, the irregularities ostensibly justifying invalidation of the LD25 elections were material to the outcomes in the LD25 elections.

5.      After announcing the purported invalidation of the LD25 elections, the County Chairman refused to provide records relating to the LD25 elections to duly elected PCs from LD25 who were entitled to receive copies of such records.

6.      This lawsuit seeks to restore the rule of law to the County Party and the Republican Party in LD25, and to defend the statutory and constitutional voting rights of PCs in LD25.

## PLAINTIFFS

7.      All the Plaintiffs are Republican PCs in LD25 who voted in person or by proxy in the LD25 elections on November 29.

8.      E. Paul Whetten was elected Chairman of the Republican PCs in LD25 on November 29.

9.      Robin Harris was elected First Vice Chairman of the Republican PCs in LD25 on November 29.

10.     John Giles was elected Second Vice Chairman of the Republican PCs in LD25 on November 29.

11.     Barbara Abney, Traci Beagley, Dilworth Brinton Jr., Curtis Brown, Alayne Favreau, J. Glade Soelberg, and Larry Winward were elected Third Vice Chairmen of the Republican PCs in LD25 on November 29.

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

3

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

12.     Brent Ellsworth was elected Recording Secretary of the Republican PCs in LD25 on November 29.

13.     David Ricks was elected Correspondence Secretary of the Republican PCs in LD25 on November 29.

14.     Colleen Wheeler coordinated the collection of and submitted approximately 135 signed forms ("Candidacy Declaration Forms") formally declaring the candidacy of reputable PCs for positions on either the LD25 Board of Officers or the State Committee for the Arizona Republican Party in anticipation of the LD25 elections held on November 29.

## DEFENDANTS

15.     The County Party is an unincorporated political organization through which the affairs of the Republican Party are administered in Maricopa County, Arizona.

16.     The Investigative Committee is an *ad hoc* committee appointed by the County Chairman to investigate and invalidate the elections held in LD25 on November 29.

17.     The County Chairman is the Chairman of the County Party.  He created the Investigative Committee and appointed its members.   The Investigative Committee operated at the sole discretion and under the control of the County Chairman.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over Counts II, III, and V pursuant to 28 U.S.C. § 1331(a) because such claims arise under federal law, and pursuant to 28 U.S.C. § 1343(a)(4) because such claims seek equitable relief under an Act of Congress providing for the protection of civil rights.

19.     This Court has supplemental jurisdiction over Counts I, IV, VI, and VII pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Counts II, III, and V that they form part of the same case or controversy.

20.     The District of Arizona is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in the District of Arizona, and because a

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

substantial part of the events or omissions giving rise to the claims occurred in the District of Arizona.

21.     The Phoenix Division of this Court is the proper intra-district venue for this action pursuant to Local Rule of Civil Procedure 77.1 because the events underlying the claims in this action occurred in Maricopa County, Arizona.

22.     A justiciable controversy exists because the Defendants have violated the rights of the Plaintiffs as winners of and voters in the LD25 elections, and as members of the Republican Party, and without judicial relief the Plaintiffs will suffer immediate injury and loss of rights.  There is an actual and justifiable controversy regarding the Plaintiffs' rights, and the judgment of this Court will end the controversy.

**FACTUAL BASIS OF CLAIMS**

**Organization of the Republican Party in Arizona**

23.     Under Arizona law, every two years the Republican Party elects PCs in precincts across the state.  *See* Ariz. Rev. Stat. § 16-822.

24.     After being elected, the PCs in each legislative district in Maricopa County hold two intra-party elections to select party leadership:

  a. First, they elect from their membership a board of officers (*i.e.*, at least one chairman, two vice chairmen, one secretary, and one treasurer) to govern the internal affairs in the Republican Party in the legislative district. *Id.* § 16-823; LD25 Bylaws § VII(B)-(C).

  b. Second, they elect from their membership State Committeemen to help govern the affairs of the Arizona Republican Party. *Id.* § 16-825; Ariz. Republican Pty. Bylaws § II(A); County Party Bylaws § IV(1)(A).

25.     In LD25, to become a candidate for either the LD25 Board of Officers or the State Committee, a PC must submit a Candidacy Declaration Form.  If timely submitted, the PC's name will be printed on the ballot for the LD25 Board of Officers election or the State Committeemen election, as appropriate.  *See* LD25 Bylaws § VII(B)(1)(a).

26. After being elected in their LDs, the State Committeemen from across Maricopa County are certified by the County Party. *See* Ariz. Rev. Stat. § 16-825; County Party Bylaws § V(1)(A)(2).

27. The confirmation of the State Committeemen chosen in the individual LDs is, however, perfunctory. There is no process by which a PC in Maricopa County can be nominated for State Committeeman *except* through LD elections (assuming that an LD has, in fact, held LD elections),[1] and the bylaws of the County Party do not even require the County Party to hold a formal vote certifying the State Committeemen selected in the LDs. Although there is a process for the County Party to challenge the certification of a State Committeeman selected in an LD, the only basis for such a challenge is the failure of the State Committeeman to be an elected PC representing the LD that elected him or her as a State Committeeman. *Id.* § V(1)(A)(2)-(3). In short, the process of selecting State Committeemen in Maricopa County is the responsibility of the LDs and not the County Party.

28. In 2013, the certification of State Committeemen by the County Party, however nominal, will be held on January 12, 2013.

29. After certification by their counties, State Committeemen from across Arizona elect from their membership a chairman, a secretary, and a treasurer for the Arizona Republican Party. *See* Ariz. Rev. Stat. § 16-826(A).

30. In 2013, the election of the chairman of the Arizona Republican Party will be held on January 26, 2013.

31. A true and correct copy of the bylaws of the Arizona Republican Party is attached hereto as Exhibit A.

32. A true and correct copy of the bylaws of the County Party is attached hereto as Exhibit B.

---

[1] In the absence of an LD election for State Committeeman, the LD chairman or the County Chairman may nominate PCs for the position of State Committeeman, *see* County Party Bylaws § IV(1)(A)(3)-(4)—but nominations from the floor of County Party meetings are not authorized.

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

33.     A true and correct copy of the bylaws for the Republican Party in LD25 is attached hereto as Exhibit C.

### LD25 Board of Officers Election

34.     On the evening of November 29, 2012, the PCs in LD25 gathered to elect State Committeemen and the LD25 Board of Officers.

35.     As a general matter, for several years the board of officers and State Committeemen elections in LD25 have been dominated by two political factions.  One faction is comprised of PCs aligned with Russell Pearce, a PC in LD25.  Pearce, formerly the President of the Arizona State Senate and an outspoken supporter of anti-immigration laws, was recalled from office in 2011 and decisively lost a reelection bid in the 2012 Republican primary election.  The other faction is not aligned with Pearce, and generally supports candidates who, although conservative, place greater emphasis on economic policy and "big tent" Republican principles and less emphasis on social "wedge" issues.  As a general matter, the Plaintiffs fall in the latter category.

36.     According to local custom and rules, the credentials of attendees and the propriety of proxy authorization forms were verified by the Credentials and Tally Committee for LD25 before voting began.

37.     In the LD25 Board of Officers election, the PCs in LD25 elected the following:

        a.  Plaintiff E. Paul Whetten as Chairman,

        b.  Plaintiff Robin Harris as First Vice Chairman,

        c.  Plaintiff John Giles as Second Vice Chairman,

        d.  Plaintiff Barbara Abney, Plaintiff Traci Beagley, Plaintiff Dilworth Brinton Jr., Plaintiff Curtis Brown, Plaintiff Alayne Favreau, Larry Lesueur, Pat Oldroyd, Plaintiff J. Glade Soelberg, and Plaintiff Larry Winward as Third Vice Chairmen,

        e.  Tyler Godfrey as Treasurer,

        f.  Plaintiff Brent Ellsworth as Recording Secretary, and

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

g.  Plaintiff David Ricks as Correspondence Secretary.

38.     These results represented a decisive rejection of the LD25 faction aligned with Russell Pearce, and significant gains for the LD25 faction not aligned with Russell Pearce.

39.     The results of the election were certified that night.

40.     Plaintiff Whetten was sworn in as Chairman before leaving the voting site, and took office immediately.

41.     No irregularities in the LD25 Board of Officers election were raised or noted on the night of the election.

**State Committeemen Elections**

42.     While ballots for the LD25 Board of Officers elections were being counted, the PCs in LD25 began the State Committeemen elections.

43.     Before balloting for the State Committeemen elections began, however, the County Chairman announced to the PCs in LD25 that Candidacy Declaration Forms had been submitted in the name, but without the authorization or signature, of five PCs.

44.     The names of those five PCs were removed from the State Committeemen ballot.

45.     The County Chairman announced to the PCs that, if anyone else's name appeared on the State Committeemen ballot without their authorization, they should notify the County Chairman immediately.

46.     Some of the PCs present, whose names appeared on the State Committeemen ballot, reported that they had not signed a Candidacy Declaration Form. The names of those PCs were written on a whiteboard at the front of the room, so that the PCs in attendance would know that the individuals listed were not, in fact, candidates. None of the PCs reporting that they had not signed a Candidacy Declaration Form were elected as State Committeemen.

47.     The PCs cast their ballots for State Committeemen, the ballots were counted, and winners were declared.

8

48.     The results of the State Committeemen elections, like the results of the LD25 Board of Officers elections, represented significant losses for the LD25 faction aligned with Russell Pearce and significant gains for the LD25 faction not aligned with Russell Pearce.

**State Committeemen Election Challenge**

49.     The afternoon following the elections, and at the direction of the County Chairman, the outgoing First Vice Chairman of LD25 sent an e-mail to all the PCs in LD25, indicating that the County Chairman "has asked that LD-25 be notified that there is a possibility of the November 29 election of the LD-25 Board, the LD-25 State Committeemen and the amendments to the Bylaws may be ruled invalid due to voter fraud."

50.     The County Chairman caused the e-mail to be sent on his own initiative, before any challenges to the November 29 election had been filed.

51.     On December 4, 2012, Plaintiff Ellsworth delivered to the County Chairman a written challenge to the State Committeemen elections.

52.     Plaintiff Ellsworth's challenge alleged that the County Chairman's allegation of "voter fraud" had called into question the legitimacy of the State Committeemen election, and therefore requests an investigation to clear any suspicions of impropriety and restore confidence in the integrity of the LD25 elections.

53.     A true and correct copy of Plaintiff Ellsworth's challenge is attached hereto as Exhibit D.

54.     No challenges to the LD25 Board of Officers election were filed.

**Bias and Lack of Transparency During the Investigation**

55.     The County Chairman appointed certain individuals, including Plaintiff Whetten, to the *ad hoc* Investigative Committee to investigate the propriety of the LD25 elections.

56.     The outgoing Chairwoman of the LD25 Board of Officers asked the County Chairman to appoint to the Investigative Committee three persons, including Plaintiffs

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

Wheeler and Soelberg, who were familiar with the collection of Candidacy Declaration Forms and proxy designation forms for the November 29 elections.  The three individuals suggested by the outgoing chairwoman were not aligned with Russell Pearce.

57.    The County Chairman refused to appoint them to the Investigative Committee.  This decision benefitted the LD25 faction aligned with Russell Pearce by severely limiting the representation on the Investigative Committee of PCs who were not aligned with Russell Pearce.

58.    The Investigative Committee met on December 5-7, 2012.

59.    The Investigative Committee did not provide advance public notice of its meeting dates, times, and locations.

60.    On December 5, Plaintiff Ellsworth, who had filed the challenge to the State Committeemen election, attempted to attend the first meeting of the Investigative Committee to observe the investigation.

61.    The County Chairman directed Plaintiff Ellsworth to leave the site of the meeting and not observe its activities.

62.    The Arizona Republican Party, however, has determined that the meetings of elected Republican Party officials are subject to Arizona's open meeting laws.

63.    A true and correct copy of a letter from Tom Morrissey, the Chairman of the Arizona Republican Party, concerning the applicability of Arizona's open meeting laws to Republican Party meetings is attached hereto as Exhibit E.

**Invalidation of Both Elections**

64.    At the end of the Investigative Committee's three-day investigation, the County Chairman concluded that "a number of signatures on the [Candidacy Declaration Forms] and the [proxy designation forms] did not match the signatures on record from the County Recorder's office."

65.    This conclusion that certain signatures "did not match" was, in some instances, unsupported by any substantial evidence and reached in bad faith.  None of the handwriting analysis was supported by an expert or other qualified reviewer, and the

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

Investigative Committee failed to interview any of the individuals whose signatures were under review to inquire as to authenticity of the signatures in question.

66.     The Investigative Committee conducted its entire investigation behind closed doors, without any opportunity for affected PCs and candidates to attend or participate in the investigation, and without any finding that any errors in the elections were material to the results of the elections.

67.     The Defendants concluded that there were enough "irregularities" to invalidate the State Committeemen election.[2]

68.     The Defendants further concluded that the LD25 Board of Officers election was invalid.

69.     The County Chairman concluded the investigation and purported to invalidate the LD25 Board of Officers election without calling for a formal vote by the appointed members of the investigative committee.

70.     The Defendants' decision to invalidate the LD25 Board of Officers election benefitted the candidates aligned with Russell Pearce, as it would give them a second opportunity to turn out supporters and win election.  Similarly, that decision damaged the LD25 Board of Officers who won that night, as they were purportedly stripped of authority to exercise the powers of offices to which they were duly elected.

71.     Although he was a member of the Investigative Committee, Plaintiff Whetten opposes the methods, conclusions, and purported actions of the Investigative Committee and would vote against invalidation of the LD25 Board of Officers election if the County Chairman called for a formal vote by the members of the Investigative Committee.

72.     On December 9, 2012, the County Chairman caused an e-mail to be sent to the PCs in LD25, by the outgoing LD25 First Vice Chairman on behalf of the

---

[2]     The plaintiffs do not contend that the State Committeemen election held in LD25 on November 29, 2012 was valid.  Consequently, the validity of the State Committeemen election is not at issue in this lawsuit, and is being addressed outside the judicial system.

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

Investigative Committee, purporting to invalidate both the LD25 Board of Officers election and the State Committeemen election.

73.     A true and correct copy of such e-mail is attached hereto as Exhibit F.

74.     The e-mail stated that the outgoing LD25 Board of Officers, rather than the LD25 Board of Officers elected on November 29, would preside over new elections in LD25.

### Conflicting Plans for the New Elections

75.     There are currently two separate groups planning for new elections in LD25.

76.     First, more than ten percent of the PCs in LD25 have formally noticed a meeting of the PCs in LD25 for January 2, 2013 (the "January 2 Meeting")—which, under the bylaws of the County party, is the last day on which LD25 can elect State Committeemen.  The LD25 Board of Officers elected on November 29 will preside at the January 2 Meeting.  The purpose of the January 2 Meeting will be, in part, to validly elect State Committeemen.  The January 2 Meeting will interpret and strictly follow the duly adopted bylaws of the Republican Party in LD25.

77.     A true and correct copy of the notice of the January 2 Meeting is attached hereto as Exhibit G.

78.     Second, the County Chairman is planning to hold a meeting of the PCs in LD25 on January 9, 2013 (the "January 9 Meeting").

79.     On December 17, 2012, the County Chairman caused the outgoing LD25 First Vice Chairman to send a notice of new elections at the January 9 Meeting to the PCs in LD25.

80.     The notice of the January 9 Meeting did not follow the notice requirements set forth in Republican Party bylaws.  Specifically, the notice was not transmitted in hard copy, was not sent to all the PCs in LD25, did not identify all the candidates who would be eligible for election, scheduled the meeting fewer than 10 days before the organizational meeting of the County Party, and was not issued by at least ten percent of

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

the PCs in LD25.  *See* County Party Bylaws §§ II(4)(E), IV(1)(A)(2); LD25 Bylaws § VII(C)(1).

81.     The notice purports to establish new rules, which are in conflict with the bylaws of the Republican Party for LD25, for the elections to be held at the January 9 Meeting.   Specifically,   the   notice   reopens   the   period   for   submitting   Candidacy Declaration Forms; rather than limiting the list of eligible candidates to those who were qualified as of the date of the November 29 election, the notice purports to start anew and permit   all   interested   PCs   to   submit   new   Candidacy   Declaration   Forms   regardless   of whether they previously complied with the ballot-access requirements.

82.     The Defendants' decision to reopen the period for submitting Candidacy Declaration Forms violates the bylaws of the Republican Party in LD25.  That decision benefits the candidates aligned with Russell Pearce, many of whom failed to submit the required   Candidacy   Declaration   Forms   in   time   for   the   November   29   election.    The decision also harms the candidates not aligned with Russell Pearce, virtually all of whom timely submitted Candidacy Declaration Forms for the November 29 election.

83.     A true and correct copy of the notice of the January 9 Meeting is attached hereto as Exhibit H.

84.     In explaining his decision to the media, the County Chairman further noted that there would "probably" be deputies from the Maricopa County Sheriff's Office in attendance at the January 9 Meeting, ready to become involved if anything "untoward" happens.

85.     A true and correct copy of a media report of the County Chairman's interview is attached hereto as Exhibit I.

86.     On information and belief, none of the changes in elections regulations enacted or administered by the Defendants with respect to the November 29 elections or the January 9 Meeting have been "precleared" by the U.S. Department of Justice or the U.S. District Court for the District of Columbia.  *See generally* 42 U.S.C. § 1973C.

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

**Improper Concealment of Evidence**

87.     After the November 29 elections, the records of the elections should have been held in the custody of the LD25 Credentials and Tally Committee.  *See* County Party Bylaws § IV(2)(C)(3).

88.     The chairman of the Credentialing and Tally Committee for LD25 turned the records over to the County Chairman.

89.     On December 11, 2012, Brian Nissen, a PC in LD25, submitted a written request to the County Chairman for copies of the records of the November 29 election.

90.     A true and correct copy of Nissen's request is attached hereto as Exhibit J.

91.     The possessor of the records of the November 29 election is required to provide copies of the requested records to Nissen no later than December 14, 2012.  *See* County Party Bylaws § IV(2)(C)(3).

92.     To date, the County Chairman has not provided copies of the requested records or otherwise responded to Nissen's request.

<u>COUNT I</u>
**ARIZ REV. STAT. §§ 12-1831 TO -1832: DECLARATORY AND INJUNCTIVE RELIEF FOR EXCEEDING AUTHORITY UNDER STATE ELECTION LAWS AND REPUBLICAN PARTY BYLAWS**
**(All Defendants)**

93.     The allegations set forth in the preceding paragraphs are incorporated herein by reference.

94.     Under Ariz. Rev. Stat. § 16-823(C), the PCs in LD25 are entitled to elect the LD25 Board of Officers.

95.     The Investigative Committee lacked authority under state law, the bylaws of the Republican Party of Arizona, the bylaws of the County Party, and the bylaws of the Republican Party in LD25 to invalidate the LD25 Board of Officers election.

96.     The Plaintiffs are therefore entitled to declaratory and injunctive relief against the Defendants pursuant to Ariz. Rev. Stat. § 12-1831 to -1832 nullifying the

Defendants' interference with and purported invalidation of the LD25 Board of Officers election.

## COUNT II
### 42 U.S.C. § 1973C: DECLARATORY AND INJUNCTIVE RELIEF FOR FAILURE TO PRECLEAR CHANGES IN ELECTIONS LAW AND PROCEDURES GOVERNING THE LD25 BOARD OF OFFICERS ELECTIONS
#### (All Defendants)

97.     The allegations set forth in the preceding paragraphs are incorporated herein by reference.

98.     The Investigative Committee enacted and administered numerous changes in the procedures governing the LD25 Board of Officers elections, including without limitation:

a.  allowing an investigation of LD25 Board of Officers elections to be opened absent a complaint;

b.  creating a new body (*i.e.*, the Investigative Committee) with responsibility to investigate LD25 Board of Officers elections;

c.  judging and invalidating the results of the LD25 Board of Officers elections;

d.  vesting authority to oversee new LD25 Board of Officers elections with the outgoing LD25 Board of Officers; and

e.  replacing the LD25 bylaws concerning the necessary qualifications for LD25 Board of Officers candidates with candidate-qualification directives from the County Chairman.

99.     By implementing changes in elections rules and procedures concerning the LD25 Board of Officers elections without prior "preclearance," the Investigative Committee violated the Plaintiffs' right to hold office on the LD25 Board of Officers and to have their vote for candidates for the LD25 Board of Elections fairly counted, as protected by 42 U.S.C. § 1973C; 28 C.F.R. § 51.7; 28 C.F.R. § 51.13(a)-(b), (g), and (*l*); and 28 C.F.R. 51 app.

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

100.   The Plaintiffs therefore have a claim, and are entitled to declaratory and injunctive relief, against the Defendants pursuant to 42 U.S.C. § 1973C for violations of the preclearance requirement, and pursuant to 42 U.S.C. § 1973L for attorney's fees and costs.

**COUNT III**

**42 U.S.C. § 1983: DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF FEDERAL RIGHTS ARISING UNDER THE DUE PROCESS CLAUSES**
**(All Defendants)**

101.   The allegations set forth in the preceding paragraphs are incorporated herein by reference.

102.   In investigating and purporting to invalidate the LD25 elections, the Investigative Committee violated the Plaintiffs' right to due process under the Due Process Clauses of the Fifth and Fourteenth Amendments of U.S. Constitution.

103.   The defects in the investigation and purported invalidation of the Investigative Committee include but were not limited to the following:

    a.  the Investigative Committee did not provide advance notice of its meetings or the scope of its investigation and authority;

    b.  the Investigative Committee failed to allow interested parties to appear, present evidence, cross examine witnesses, or speak to the issues under consideration;

    c.  the Investigative Committee concluded its investigation and purported to invalidate the LD25 elections without a formal vote of its members;

    d.  the Investigative Committee failed to find that the purported irregularities on which the Investigative Committee relied in invalidating the LD25 elections were material to the outcomes in the LD25 elections; and

    e.  the Investigative Committee did not provide adequate notice of its findings and actions.

104.   In investigating and purporting to invalidate the LD25 elections, the Defendants' conduct at all times constituted state action taken under color of state law.

105.   The Plaintiffs therefore have a claim, and are entitled to declaratory and injunctive relief, against the Defendants pursuant to 42 U.S.C. § 1983 for deprivation of federal rights under color of state law, and pursuant to 42 U.S.C. § 1988 for attorney's fees and costs.

**COUNT IV**
**ARIZ REV. STAT. §§ 12-1831 TO -1832: DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF OPEN MEETINGS LAWS**
**(All Defendants)**

106.   The allegations set forth in the preceding paragraphs are incorporated herein by reference.

107.   Under Ariz. Rev. Stat. § 38-431.01, the Investigative Committee was required to conduct its investigation and reach its decisions in the open, with advance notice and opportunity for the public to attend and speak.

108.   By failing to do so, and by ejecting interested members of the public who wished to observe its proceeding, the Investigative Committee rendered all its actions null and void pursuant to Ariz. Rev. Stat. § 38-431.05.

109.   The Plaintiffs are therefore entitled to declaratory and injunctive relief against the Defendants pursuant to Ariz. Rev. Stat. §§ 12-1831 to -1832 for violations of open meetings laws, and pursuant to Ariz. Rev. Stat. § 12-348 for attorney's fees and costs.

**COUNT V**
**42 U.S.C. § 1973C: DECLARATORY AND INJUNCTIVE RELIEF FOR FAILURE TO PRECLEAR CHANGES IN ELECTIONS LAW AND PROCEDURES GOVERNING THE STATE COMMITTEEMEN ELECTIONS**
**(All Defendants)**

110.   The allegations set forth in the preceding paragraphs are incorporated herein by reference.

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

111.     The Investigative Committee enacted and administered numerous changes in the procedures governing the State Committeemen elections, including without limitation:

     a.  vesting authority to oversee new State Committeemen elections in LD25 with the outgoing LD25 Board of Officers; and

     b.  replacing the LD25 bylaws concerning the necessary qualifications for State Committeemen candidates in LD25 with candidate-qualification directives from the County Chairman.

112.     By implementing changes in elections rules and procedures concerning the State Committeemen elections in LD25 without prior "preclearance," the Investigative Committee violated the Plaintiffs' right to hold office on the State Committee and to have their vote for candidates for State Committeemen fairly counted, as protected by 42 U.S.C. § 1973C; 28 C.F.R. § 51.7; 28 C.F.R. § 51.13(a)-(b), (g), and (*l*); and 28 C.F.R. 51 app.

113.     The Plaintiffs therefore have a claim, and are entitled to declaratory and injunctive relief, against the Defendants pursuant to 42 U.S.C. § 1973C for violations of the preclearance requirement, and pursuant to 42 U.S.C. § 1973L for attorney's fees and costs.

**COUNT VI**
**ARIZ REV. STAT. §§ 12-1831 TO -1832: DECLARATORY AND INJUNCTIVE RELIEF CONCERNING THE PROPRIETY OF MEETING NOTICES**
**(All Defendants)**

114.     The allegations set forth in the preceding paragraphs are incorporated herein by reference.

115.     Notices of any meetings at which the PCs of LD25 will complete the elections of the LD25 Board of Officers and State Committeemen must:

     a.  be mailed in hard copy, *see* LD25 Bylaws § VII(C)(1);

     b.  be transmitted to all the PCs in LD25, *see* County Party Bylaws § II(4)(E);

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

c.  identify the PCs who will be eligible for election, *see* LD25 Bylaws § VII(C)(1);

d.  set a date for the meeting that is at least 10 day prior to the organizational meeting of the County Party, *see* County Party Bylaws § IV(1)(A)(2); and

e.  be issued by (i) the Chairman of the Republican Party of LD25 within 5 days of the November 29 meeting, (ii) the County Chairman 6 to 10 days after the November 29 meeting, or (iii) at least ten percent of the PCs in LD25 at least 11 days after the November 29 meeting, *see* County Party Bylaws § II(4)(E).

116.    The notice transmitted in respect of the January 2 Meeting satisfies all the foregoing requirements.

117.    The notice transmitted in respect of the January 9 Meeting fails to satisfy any of the foregoing requirements.

118.    The Plaintiffs are therefore entitled to declaratory and injunctive relief against the Defendants pursuant to Ariz. Rev. Stat. §§ 12-1831 to -1832 that the notice transmitted in respect of the January 2 Meeting is valid and that the notice transmitted in respect of the January 9 Meeting is null and void, and pursuant to Ariz. Rev. Stat. § 12-348 for attorney's fees and costs.

### COUNT VII
### ARIZ REV. STAT. §§ 12-1831 TO -1832: DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF RECORDS-INSPECTION RIGHTS
### (The County Chairman)

119.    The allegations set forth in the preceding paragraphs are incorporated herein by reference.

120.    Under County Party Bylaws § IV(2)(C)(3), the Credentials and Tally Committee for LD25 is required to (a) maintain custody of records relating to the November 29 election for three months and (b) and provide copies of such records to any PC from LD25, upon written request, within three days.

121. The County Chairman is improperly maintaining possession of the records relating to the November 29 election.

122. The County Chairman is further refusing to respond to duly submitted requests from Nissen for copies of records relating to the November 29 election.

123. Nissen is therefore entitled to declaratory and injunctive relief against the County Chairman pursuant to Ariz. Rev. Stat. §§ 12-1831 to -1832 for violations of Nissen's right to inspect the books and records of the Republican Party, and pursuant to Ariz. Rev. Stat. §§ 12-341.01 and -348 for attorney's fees and costs.

### DEMAND FOR RELIEF

124. WHEREFORE, the Plaintiffs demand relief in the following forms:

    f. a declaration pursuant to 28 U.S.C. § 2201 and Ariz. Rev. Stat. § 12-1831 to -1832 that:

        i. the individuals elected to the LD25 Board of Officers election at the November 29 meeting of the LD25 PCs were duly elected, and are entitled to all the rights and privileges of their respective officers;

        ii. the County Chairman may not amend, suspend, or replace all or any portion of the bylaws of the Republican Party in LD25 without the approval of the PCs in LD25 or preclearance;

        iii. the PCs in LD25 may conduct business at the January 2 Meeting;

        iv. any business conducted at the January 9 Meeting is null and void; and

        v. Nissen is entitled to receive copies of the requested records immediately.

    g. an order pursuant to 28 U.S.C. § 2202 and Ariz. Rev. Stat. § 12-1801 that:

        i. directs the Defendants to recognize the rights, privileges, and official acts of, and to refrain from replacing or attempting to

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004

replace, the LD25 Board of Officers elected at the November 29 meeting;

    ii.  directs the Defendants and their agents to enforce the bylaws of the Republican Party in LD25, and to refrain from purporting to replace such bylaws with directives not precleared or duly approved by the majority of PCs in LD25;

    iii.  prohibits the PCs of LD25 from taking any action, or enforcing any decisions taken, at the January 9 Meeting; and

    iv.  directs the County Chairman immediately to provide to Nissen copies of the records requested by Nissen.

  h.  an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1973C and 1988(b), Ariz. Rev. Stat. §§ 12- -341.01 and 348, the private attorney general doctrine, and other applicable law; and

  i.  such other relief as the Court deems necessary, equitable, proper, or just.

DATED this 24th day of December, 2012.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: _/s/Kory A. Langhofer_
    Kory A. Langhofer
    John C. West
    One East Washington Street, Suite 2400
    Phoenix, AZ   85004
    Attorneys for Plaintiffs E. Paul Whetten, *et al.*

1

## VERIFICATION

2

3
STATE OF ARIZONA        )
4                       ) ss.
County of Maricopa      )
5

6
E. Paul Whetten, being first duly sworn upon his oath, deposes and says:

7
I have read the foregoing Verified Complaint and know the contents thereof.  I know the
allegations of the Verified Complaint to be true, except the matters stated therein on
8
information and belief, which I believe to be true.

9

10
                                                    E. Paul Whetten

11

12
Subscribed and sworn to before me this 24th day of December, 2012.

13

14
                                                    Notary Public

15

Peter Brennan
Notary Public
Maricopa County, Arizona
My Comm. Expires 04-10-15

16

17

18

19

20

21

22

23

24

25

26

27

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
One East Washington Street, Suite 2400
Phoenix, AZ 85004